IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| TANGEE RENEE LAZARUS, #A1048661, | ) ) ) | CIV. NO. 11-00279 SOM-RLP |
| Plaintiff, | ) ) | ORDER DISMISSING COMPLAINT IN PART |
| vs. | ) ) | |
| RONALD NIMCHESKI, MARK PATTERSON, LINDA RIVERA, MCNEILL KAMAI, RICHARD MELLO, CHEYENNE EVANS, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## ORDER DISMISSING COMPLAINT IN PART

Before the court is *pro se* Plaintiff Tangee Renee
Lazarus's prisoner civil rights complaint. Lazarus is
incarcerated at the Women's Community Correctional Center
("WCCC"). Lazarus names WCCC Food Service Manager Ronald
Nimcheski in his individual and official capacities, and WCCC
Warden Mark Patterson, Inmate Education Coordinator McNeill
Kamai, Inmate Grievance Specialist Linda Rivera, Offender
Services Administrator Richard Mello, and Adult Correctional
Officer ("ACO") Cheyenne Evans in their official capacities as
Defendants to this suit (collectively, "Defendants"). Plaintiff
alleges that Defendants violated the First and Fourteenth
Amendments and the Americans With Disabilities Act ("ADA"), when
she was removed from an educational program at WCCC.

The court granted Lazarus's *in forma pauperis* application on May 2, 2011, *see* Doc. No. #4, and now screens the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915(A)(b)(1). The Complaint is DISMISSED in part for Lazarus's failure to state a claim. Lazarus is granted leave to amend the Complaint, if possible, to cure its deficiencies.

## I. BACKGROUND AND CLAIMS

Lazarus reentered WCCC on a parole violation on October 4, 2010. In November, Lazarus began working again in the WCCC kitchen, a position she had held from February to April, 2010, before she was released on parole. Lazarus alleges that Nimcheski began immediately to harass her verbally, calling her "junkie" and making other derogatory comments about her drug addiction. On December 24, 2010, Lazarus filed her first grievance regarding Nimcheski's alleged comments and conduct, No. 167535. Approximately one week later, Lazarus resigned from working in the kitchen, allegedly to avoid Nimcheski's harassment and to await an answer to her grievance.

In January 2011, after she had resigned from the kitchen, Lazarus applied for and was approved to participate in Culinary Arts 120, a class sponsored by Kapiolani Community College and held at WCCC. Lazarus claims that, although her class work was exemplary, Nimcheski continued to harass her during classes by refusing to respond to her questions, opining

that other students deserved to be in the class more than she, and calling her a "lost cause" and a "junkie."  Doc. #1, Compl. at 9.[1]

On March 1, 2011, Lazarus filed a second grievance against Nimcheski, No. 169481, alleging that Nimcheski's remarks to and about her were continuing.  Lazarus alleges that, one week later, on March 8, 2011, Nimcheski whispered an expletive to her, to which she responded that she had filed a grievance against him.  Doc. #1, Compl. at 10.  Five minutes after this exchange, Nimcheski allegedly walked to the middle of the kitchen and loudly exclaimed, "stop harassing me Lazarus."  *Id.*  Lazarus says that, five minutes after this, Lazarus was called from the kitchen by ACO Sargent Uperesa, who informed Lazarus that she was being terminated from the Culinary Arts 120 class for reasons Uperesa said she did not know.  Lazarus alleges that, approximately an hour and a half later, Nimcheski told WCCC Recreation Specialist Larson Medina that he had removed Lazarus from the class because he was "tired of" her, she had "smoked too much ice," and she was nothing but a junkie.  *Id.* 10-11.

Lazarus states that she then filed two more grievances, No. 169487, grieving her termination from the educational program, and No. 169488, complaining that she had not received a

---

[1] The court refers to the Complaint's electronic pagination, as reflected in the case CM/ECF docket entries.

response to grievance No. 167535.  The next day, March 9, 2011, Lazarus filed a fifth grievance, No. 169489, again complaining that she had been terminated from the educational program, but specifying that the termination was Nimcheski's way of retaliating against her for having filed the earlier grievances. On March 14, 2011, Lazarus filed her final grievance relating to this situation, No. 169491, alleging discrimination regarding Nimcheski's statements and actions.  Lazarus complains that her grievances were ignored, rejected as duplicative, or not responded to in a timely manner.

On April 28, 2011, Lazarus filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983.  Lazarus seeks compensatory and punitive damages from Nimcheski.  Lazarus seeks prospective injunctive relief from Patterson, Mello, Kamai, Evans, and Rivera, who were named in their official capacities only.  Specifically, Lazarus seeks an order requiring them to institute a policy (1) stating that prison officials must answer inmate grievances, (2) ending the practice of suspending inmates from educational programs pending investigation of misconduct, (3) providing for written notice and a hearing on misconduct reports that may result in an inmate's removal from such programs, and (4) compensating a prisoner who is removed from an educational program for "lost program time."  Doc. #1, Compl. at 23.

## II. <u>STATUTORY SCREENING</u>

Courts are required to perform an initial screening of civil actions brought by prisoners that relate to prison conditions and/or that seek redress from a governmental entity or officer or employee of a governmental entity. The court must dismiss a complaint or portion thereof if its claims are legally frivolous or malicious, fail to state a claim on which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1); (2) 28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e (c)(1).

A complaint may be dismissed as a matter of law for failure to state a claim for (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8 of the Federal Rules of Civil Procedure does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id*. at 1951.

In screening a *pro se* complaint, the court must construe it liberally and must afford the plaintiff the benefit of any doubt. *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). The court must accept all allegations of material fact as true and construe those facts in the light most favorable to the plaintiff. *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). Leave to amend should be granted if it appears at all possible that the plaintiff can correct the defects of his complaint. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000); *see also Karim-Panahi*, 839 F.2d at 623 (*pro se*

litigant must be given leave to amend complaint unless it is absolutely clear that its deficiencies cannot be cured by amendment); *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) (same).

### III.   DISCUSSION

"To sustain an action under section 1983, a plaintiff must show '(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right.'" *Hydrick v. Hunter*, 500 F.3d 978, 987 (9th Cir. 2007) (citation omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988); 42 U.S.C. § 1983.

### A.   Count I: Verbal Harassment

Lazarus alleges that Nimcheski verbally harassed her and that Patterson, Kamai, Evans, and Rivera[2] were made aware of Nimcheski's conduct through the prison grievance process, but acted with deliberate indifference to her safety when they failed to stop the harassment and ignored or denied her grievances. Lazarus claims that this subjected her to an unsafe environment and constituted a threat to her safety, in violation of her right to equal protection under the Fourteenth Amendment.

_____

[2] Although Lazarus does not name Mello as liable for her claims in Count I, her supporting facts allege that Mello inadequately responded to one grievance that Lazarus filed.  The court therefore construes Count I as also alleging a claim against Mello.

Although Count I alleges a violation of the Fourteenth Amendment's Equal Protection Clause, Lazarus's statements that "she lived in fear that defendant Nimcheski would escalate his abuse," and that "Patterson, Kamai, Evans, and Rivera, . . . showed deliberate indifference to plaintiff's safety," suggest that she is also alleging a violation of the Eighth Amendment. Under either amendment, Lazarus fails to state a claim based on Nimcheski's alleged verbal abuse.

Verbal harassment or abuse by prison officials is insufficient to state a constitutional deprivation under 42 U.S.C. § 1983. *See Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997) (holding that abusive language regarding an inmate's religious and ethnic background does not violate the Equal Protection Clause), *abrogated on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008), *citing Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) (vulgar language directed at an inmate does not violate the inmate's civil rights and is not cognizable under § 1983); *Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996) (harassment does not constitute an Eighth Amendment violation) *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) (verbal threats and name calling are not actionable under § 1983).

Lazarus's claims that Nimcheski's alleged verbal harassment violated her constitutional rights, whether those

rights are embodied in the Eighth or Fourteenth Amendment, fail to state a claim.  Count I is DISMISSED with prejudice.

**B.    Count II: Retaliation**

Lazarus claims that Nimcheski, in retaliation for the grievance she filed against him, orchestrated her removal from the educational program, in violation of the First Amendment. She further claims that Patterson, Kamai, Mello, Evans,[3] and Rivera were deliberately indifferent to this allegedly illegal conduct, as they failed to respond to or uphold her grievances or reinstate her in the program.  She claims that this denied her educational programming and college credits.

**1.    Retaliation Claims Against Nimcheski Shall Proceed.**

"A prisoner suing prison officials under section 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline."  *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994) (*per curiam*); *see also Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *Austin v. Terhune*, 367 F.3d 1167-1170-71 (9th Cir. 2004); *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003).  There is a First

---

[3] Lazarus does not explicitly name Evans in Count II, but her supporting facts allege that Evans failed to adequately respond to Lazarus's informal request for help in the dispute between Lazarus and Nimcheski.  The court therefore construes Count II as alleging a claim against Evans.

Amendment right to petition the government through prison grievance procedures. *See Rhodes*, 408 F.3d at 567. "Retaliation against prisoners for their exercise of this right is itself a constitutional violation," and a mere threat of retaliation is sufficient injury if made in retaliation for an inmate's use of prison grievance procedures. *Brodheim v. Cry*, 584 F.3d 1262, 1269-70 (9th Cir. 2009). Lazarus's claim against Nimcheski for retaliation, insofar as he had the ability to influence her removal from the program, states a claim and shall proceed.

### 2. Claims Against Patterson, Kamai, Mello, Evans, and Rivera are Dismissed.

Lazarus's claims against Warden Patterson, Education Director Kamai, Programming Administrator Mello, ACO Evans, and Grievance Coordinator Rivera, based on their knowledge and review of her grievances, failure to intercede or uphold her claims, and failure to reinstate her in the educational program fail to state a claim. As noted, Lazarus has a First Amendment right to file prison grievances, *see Brodheim*, 584 F.3d at 1269, and her "right of meaningful access to the courts extends to established prison grievance procedures." *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995). That right, however, "does not guarantee a response to the petition or the right to compel government officials to act on" the petition. *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999).

Lazarus's allegations regarding the improper handling or outright rejection of her grievances do not show that Patterson, Kamai, Mello, Evans, or Rivera prevented her from exercising her First Amendment right to file prison grievances, or retaliated against her for doing so.

> Responding (or failing to respond) to a prisoner's
> grievance in a manner unagreeable to the prisoner is
> not an adverse action taken against the prisoner for
> filing the grievance. If it were, every time a
> prisoner disagreed with a Defendant's legitimate
> response to a grievance, it could result in a
> sustainable claim of retaliation. . . . Defendants'
> responses were a part of the exercise of [Lazarus's]
> First Amendment rights.

*McCabe v. McComber*, No. 08-00112 JMS, 2008 WL 4133186 *9 (D. Haw. Sept. 8, 2008).

Moreover, Lazarus admits that Rivera responded to several of her grievances, telling her that she could expect a response by a certain date or rejecting several grievances outright as duplicative. *See* Doc. #1, Compl. at 23-24, ¶¶ 19-21. Lazarus admits that Warden Peterson responded to her "interunit request" by explaining that she should address her concerns to Kamai as well, because Kamai was in charge of educational programs. *Id.*, Comp. at 24 ¶ 27. Lazarus acknowledges that Evans admits that Lazarus told her of Nimcheski's behavior in December 2010, but faults Evans for having failed to stop the harassment when the Culinary Arts 120 class began in January 2011. Lazarus does not claim that she asked for Evans's

assistance again, or that Evans had the power to stop Nimcheski or to respond to a formal grievance. Finally, Lazarus's claim against Mello stems from his response to her informal grievance on an "unrelated issue," involving a misunderstanding about her complaints against Nimcheski. *Id.* ¶ 28. Lazarus's own narrative shows that each of these Defendants responded in some manner to her complaints, even if not as she desired and perhaps not in a timely manner.

Insofar as Lazarus complains that she "was denied vocational programming and 10 University of Hawaii college credits" because of Patterson, Kamai, Mello, Evans, and Rivera's "deliberate indifference" with respect to the handling of her grievances, she fails to state a claim because inmates have no constitutional right to vocational programs. *See Rhodes v. Chapman*, 452 U.S. 337, 348 (1981); *Walker v. Gomez*, 370 F.3d 969, 973 (9th Cir. 2004) ("[T]he Due Process Clause of the Fourteenth Amendment does not create a property or liberty interest in prison employment."); *Rizzo v. Dawson*, 778 F.2d 527, 530 (9th Cir. 1985) (no liberty or properly interest in vocational training); *Baumann v. Arizona Dep't of Corr.*, 754 F.2d 841, 846 (9th Cir. 1985) (no constitutional right to jobs and educational opportunities).

Lazarus has no constitutional right to educational or rehabilitative programs while in prison. She also has no

constitutional right to a response to her grievances, timely, favorable, or otherwise. Lazarus is not entitled to the injunctive relief she seeks against Patterson, Mello, Kamai, Evans, and Rivera. That is, Lazarus has no right to a court order requiring them to answer inmate grievances, prohibiting suspensions from educational programs, affording written notice and a hearing before inmates are suspended from any program pending investigation of misconduct, and compensating inmates for time lost from such a program if the misconduct is not upheld or the penalty imposed is less than suspension from the program. *See* Doc. 1, Compl. at 23, Request for Relief. Lazarus's claims in Count II against Patterson, Kamai, Mello, Evans, and Rivera are DISMISSED with prejudice for failure to state a claim.

**C.   Count III: ADA Claims**

Lazarus alleges that Defendants violated the Americans With Disabilities Act ("ADA"), Title II, 42 U.S.C. § 12101 *et seq.*, when they removed or allowed her to be removed from the Culinary Arts 120 educational program. Lazarus claims that her "documented disability of drug addiction," for which she received treatment at WCCC during an earlier incarceration in 2009, is a qualified disability within the meaning of the ADA. In other words, Lazarus claims that drug addiction is a *per se* disability. The court disagrees.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Title II applies to prisoners in state prisons. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998); *see also Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1021 (9th Cir. 2010) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 691 (9th Cir. 2001)).

To state a claim under Title II of the ADA, a plaintiff must allege:

> (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability.

*McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004) (internal quotation marks omitted).

The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Drug addiction is considered a physical or

14

mental impairment under the ADA.  *Bragdon v. Abbott*, 524 U.S. 624, 632-33 (1998); *Thompson v. Davis*, 295 F.3d 890, 896 (9th Cir. 2002) (citing 28 C.F.R. § 35.104); *Kula v. Malani*, 539 F. Supp. 2d 1263, 1268 (D. Haw. 2008); 28 C.F.R. § 35.104.  "Major life activities means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  28 C.F.R. § 35.104.

Thus, to determine whether an individual is considered disabled under the ADA, courts must determine whether an individual has a mental or physical impairment that substantially limits a major life activity.  *Bragdon*, 524 U.S. at 632.  However, merely identifying an impairment does not qualify one as a disabled individual.  The plaintiff has the burden of showing that this impairment "substantially limits one or more . . . major life activities."  *Toyota Motor Manuf., Kentucky, Inc. v. Williams*, 534 U.S. 184, 195 (2002).

"The ADA defines 'disability' with specificity as a term of art.  Hence, a person may be 'disabled' in the ordinary usage sense, or even for purposes of receiving disability benefits from the government, yet still not be 'disabled' under the ADA.  The converse may sometimes be true as well."  *Sanders v. Arneson Prod., Inc.*, 91 F.3d 1351, 1354 n.2 (9th Cir. 1996); *see also Thornton v. Fed. Express Corp.*, 530 F.3d 451, 455 (6th Cir. 2008) (holding that a disability determination by the SSA,

15

even if substantiated, would not be controlling to prove that an individual is disabled within the meaning of the ADA).

Lazarus does not show that she is protected by the ADA. Simply stating that she is a drug addict is inadequate; her disability must substantially impact a major life activity, or be perceived as doing so. *See Tyson v. Oregon Anesthesiology Group, P.C.*, No. 03-1192-HA, 2008 WL 2371420 *8 (D. Or. 2008) (holding that substance abuse is not a *per se* disability under the ADA); *Jeffrey O. v. City of Boca Raton*, 511 F. Supp.2d 1328, 1333-34 (S.D. Fla. 2007) (footnote and citations omitted) (stating that the ADA requires individualized inquiries, and simply being "a recovering substance abuser" is not a *per se* disability).

Lazarus provides no facts regarding any limitations on her major life activities caused by her drug addiction, or any facts showing that she was perceived as having a disability that impaired a major life activity. To the contrary, Lazarus claims that she was qualified for, accepted into, and received exemplary grades in the Culinary Arts 120 class. She provides no facts supporting a conclusion that her drug addiction, for which she received treatment in 2009, interferes with one or more of her major life activities, or that it was perceived as such. Lazarus fails to state a plausible claim for relief under the ADA. Count III is DISMISSED with leave granted to amend.

//

**D.    Count IV: Denial of Due Process**

Lazarus alleges that she was not given written notice and a hearing before she was removed from the Culinary Arts 120 educational program, in violation of her right to due process under the Fourteenth Amendment.  To clarify, Lazarus does not claim that she was disciplined and that the discipline resulted in "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  Rather, Lazarus states that the investigation into her alleged misconduct resulting in her removal from the class is pending. *See* Doc. #1, Compl. at 21 ¶ 45.  Her only complaint is that, when the investigation is finally completed, the Culinary Arts 120 class will be finished.

The procedural guarantees of federal due process apply only when a constitutionally protected liberty or property interest is at stake. *See Ingraham v. Wright*, 430 U.S. 651, 672 (1977).  Liberty interests can arise from the Constitution or may be created by state laws or regulations. *See Hewitt v. Helms*, 459 U.S. 460, 466 (1983); *Meachum v. Fano*, 427 U.S. 215, 224-27 (1976); *Wolff v. McDonnell*, 418 U.S. 539, 557-58 (1974).  As noted, *supra* § B(2), Lazarus has no liberty or property interest in vocational training. *Rizzo*, 778 F.2d at 530.  As such, she had no right to written notice or a hearing before being terminated from the class "pending investigation."  Doc. 1,

Compl. at 17.  Count IV is DISMISSED with prejudice for failure to state a claim.

**E.    Leave to Amend**

The Complaint is DISMISSED in part for failure to state a claim.  Lazarus may file a proposed amended complaint on or before June 15, 2011.  The proposed amended complaint must cure the deficiencies noted above regarding her claims in Count III, specifically demonstrating how the conditions complained of have resulted in a deprivation of her federal constitutional or statutory rights.

The court will not refer to the original pleading to make any amended complaint complete.  Local Rule 10.3 requires that an amended complaint be complete in itself without reference to any prior pleading.  Defendants not named and claims not realleged in an amended complaint are deemed waived.  *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).  Furthermore, as a general rule, an amended complaint supersedes the original complaint.  *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967).  In an amended complaint, each claim and the involvement of each Defendant must be sufficiently alleged.

In the alternative, Lazarus may opt not to amend the Complaint, may waive the claims dismissed herein, and may proceed only on her retaliation claims in Count II against Nimcheski.  If Lazarus does not file an amended complaint on or before June 15,

2011, she will be deemed to have opted to proceed only with the claim in Count II against Nimcheski.

### IV. <u>CONCLUSION</u>

IT IS HEREBY ORDERED that:

(1)   The Complaint is DISMISSED in part for failure to state a claim.   *See* 28 U.S.C. § 1915(e)(2)(b) & 1915A(b)(1). Specifically, Counts I and IV are dismissed with prejudice; Count III is dismissed without prejudice; Count II is dismissed with prejudice as to the claims alleged against Defendants Patterson, Kamai, Rivera, Mello, and Evans.   The claims in Count II as alleged against Defendant Nimcheski state a claim and shall proceed.

(2)   Lazarus is GRANTED until June 15, 2011, to either file a proposed amended complaint that cures the deficiencies as noted above or be deemed to have waived the dismissed claims and to have chosen to proceed only with her claims in Count II against Defendant Nimcheski.   If Lazarus does not file an amended complaint by June 15, 2011, the court will direct service of the Complaint on Defendant Nimcheski as to the claims in Count II.

(3)   The Clerk of Court is directed to mail a form prisoner civil rights complaint to Lazarus so that she may comply with the directions in this Order.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 11, 2011.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

*Lazarus v. Nimcheski, et al.,* Civ. No. 11-00279 SOM-RLP; psa/Screening/dmp/
2011/Lazarus 11-279 SOM (dsm in part ftsc)